OPINION OF THE COURT
Faviola Soto, J.
This written decision amplifies on my decision of July 16, 1996, whereby defendant’s motion to dismiss was denied. The defendant is charged with operating a motor vehicle while under the influence of alcohol, in violation of Vehicle and Traffic Law § 1192 (2) and (3). Both the defendant and the People have submitted well-researched and argued papers, and the defendant has been ably represented by both his former Legal Aid counsel and his substituted private counsel.
PROCEDURAL HISTORY
On April 28, 1995, the defendant was arraigned before me on the above charges. In addition to the accusatory instrument, signed by the arresting officer, the People served and filed with the court: (i) the certified results of a chemical test analysis showing a blood alcohol level of .19 of 1%; (ii) the supporting deposition of the officer who administered the blood alcohol content test; (iii) the intoxicated driver examination sheets, which contained, inter alia, defendant’s statements that, in sum and substance, he was driving the motor vehicle, and he had been drinking "lots” of beer, having started at 10:00 p.m. and stopping at 5:00 a.m.; and (iv) the IDTU completed by the arresting officer. The People requested, inter alia, that the defendant’s license be handed up to the court. Defendant’s counsel did not rebut the chemical test results, challenge the facial sufficiency of the complaint, or otherwise challenge the prima facie showing of reasonable cause to believe that the defendant operated a motor vehicle while having a blood alcohol level in excess of .10 of 1%. Nor did the defendant request a short adjournment to do so. Defendant also *442 did not request hardship relief. Pursuant to Vehicle and Traffic Law § 1193 (2) (e) (7) (the prompt suspension law) defendant’s license was suspended.
The May 14, 1995 corroborating affidavit by an eyewitness, the informant referenced in the complaint, was thereafter filed with the court, and on May 31,1996, the complaint was deemed an information. The record does not indicate that the defendant sought to apply to the Commissioner for a "conditional license” following conclusion of the 30-day mandatory suspension of full driving privileges.
Lengthy motion practice ensued for the next year. In summary, by notice of motion dated July 26,1995, defendant moved to dismiss, arguing, inter alia, that: (i) defendant was denied both State and Federal due process by reason of the prompt suspension law; (ii) defendant’s continued prosecution violated the Double Jeopardy Clause; (iii) the prompt suspension law is otherwise unconstitutional, in that it requires the court to engage in an administrative act, and (iv) the factual allegations for the second ground is grounded in hearsay and fails to establish the driving element of the offense charged.
The People opposed defendant’s motion in papers filed on August 15, 1995; the court granted defendant’s request to file a reply, which was filed on September 12th, and the matter adjourned until October 11th. The People filed a supplemental affirmation dated October 4, 1995, and, on October 11, 1995, the matter was adjourned until November 1, 1995, for the court’s decision.
On November 1, the Honorable John A. Barone, in an oral decision, denied defendant’s motion to dismiss for facial insufficiency and denied the motion to dismiss on constitutional grounds, citing People v Condarco (166 Misc 2d 470 [Grosso, J.]).
On November 14, 1995, defendant filed a motion to renew or reargue; the People’s response and defendant’s reply were submitted on December 19, 1995. In a written decision dated January 23, 1996, Judge Barone granted that part of defendant’s motion which sought to renew or reargue, but adhered to his original decision. The court noted that: "In its original decision, this court adopted the reasoning in Condarco, which held, inter alia, that the statute does not violate defendant’s due process rights as the statute provides that the arraigning judge is to review the sufficiency of the accusatory instrument and the defendant is given the opportunity at the arraignment to contest the allegations. Without expressing an opinion *443 thereon, whether that court committed error in suspending defendant’s driver’s license is not for this court to determine.” On March 28, 1996, defendant advised the court of his intention to file a motion addressing this issue directly with me as the arraigning court. Defendant’s moving papers dated April 16, the People’s response dated May 20, and the defendant’s reply dated June 12, were referred to me on June 12, 1996 for decision. The matter was adjourned until July 16th in Part AP-3. On July 16, 1996, the Presiding Judge in Part AP-3, Honorable Harold Adler, noted my decision denying defendant’s motion, with written decision to follow. The matter was adjourned until September 4th for trial, and the matter is now in JP-1.
THE INSTANT MOTION
In this motion, defendant again raises his arguments regarding due process and the alleged insufficiency of the accusatory instrument that was before me when, as the arraigning court, defendant’s driver’s license was suspended pursuant to the prompt suspension law. The remedy defendant seeks is dismissal. The People oppose the defendant’s motion, arguing that, for these purposes, the instrument and supporting papers filed with the court were sufficient. The People also oppose defendant’s motion to the extent that it goes beyond the issues that Judge Barone gave leave to address.
In determining this motion, I had before me the papers, the court file, the minutes of the April 28th arraignment, and the Court of Appeals opinion of Pringle v Wolfe (88 NY2d 426 [1996]).
To the extent that any questions remained as to whether the prompt suspension law violates due process, and without ruling on whether the referring court gave leave to readdress this general issue in this motion to dismiss, the Court of Appeals has settled the issue. In its anticipated opinion of Pringle (supra), the Court applied the three-factor balancing test articulated by the United States Supreme Court in Mathews v Eldridge (424 US 319, 335), and found that the prompt suspension law "affords the driver all the process that is constitutionally due”. (Supra, at 435.)
Left before me is defendant’s motion to dismiss because defendant’s license was erroneously suspended, thereby violating his due process rights, in that the accusatory instrument’s allegation regarding the requisite element of operation was based on hearsay.
*444 The accusatory instrument alleges that, at West 238th Street and Broadway (a commercial district), at approximately 5:50 a.m., the deponent, the arresting officer, was informed by a named informant, that the informant observed the defendant driving, that the defendant nearly hit the informant, and that the informant stopped the defendant and took away his keys so as to prevent the defendant from continuing to drive. The deponent further stated that: there was a strong odor of alcoholic beverage on defendant’s breath; the defendant’s eyes were watery and bloodshot; the defendant was swaying, swaggering and falling; and his speech was slurred. Further, deponent was present at the administration of the chemical test analysis of defendant’s breath and observed that defendant’s blood alcohol level as displayed on the breath analysis machine was .19 of 1%.
Also before me was the sworn deposition of the officer who administered the chemical test, showing that the blood alcohol level was .19 of 1%, and the duly certified results.
I also had before me the IDTU and the sheets 1 and 2 of the intoxicated driver’s examination. Thereon is noted the defendant’s responses following the giving of interrogation warnings. The defendant responded "Yes” to the question of whether he had been driving the motor vehicle, "Yes” to the question of whether he had been drinking or using intoxicants, identified "Beer” as the kind of alcoholic beverage, "Lots” to the question of quantity, and indicated "10:00 p.m.” as the time he started drinking and "05:00 a.m.” as the time he stopped.
At his arraignment, defendant was on notice that his driver’s license may be suspended, both because the People requested this relief and for the reasons set forth in Pringle (supra). Defendant did not challenge the facial sufficiency of the instrument, nor seek to rebut the People’s prima facie showing that the defendant operated a motor vehicle with the proscribed blood alcohol level. Defendant also did not seek a short adjournment to do so or seek hardship relief. Defendant’s counsel did advise the court that the defendant denied the charges of nearly hitting somebody, and opposed the People’s request for the setting of $1,000 bail.
This court does not read either the prompt suspension law or Pringle (supra) to require that a court conduct at arraignment a formal hearing and issue a formal ruling that the People have made a prima facie showing of reasonable cause, prior to the defendant having the opportunity to either rebut this showing, or request an opportunity to do so. If defendant does not *445 challenge the People’s showing, this court similarly does not read either the statute or Pringle to require a court, during the press of arraignments, to nonetheless formally conduct a hearing and issue findings and a formal ruling prior to the suspension of defendant’s driver’s license.
Indeed, the Court of Appeals specifically noted that due to the States’ recognized " 'paramount interest’ in maintaining highway safety”, the States are " 'accorded * * * great leeway in adopting summary procedures to protect public health and safety’ ” (citations omitted). (Pringle v White, supra, at 434.) Moreover, the Court specifically rejected that a plenary hearing is required, as " 'the summary and automatic character of the suspension sanction * * * is critical to attainment of [the State’s] objectives’ ” and the " 'driver’s right to a hearing before he may deprived of his license * * * accords him all of, and probably more than, the process that the Federal Constitution assures’ ” (citations omitted). (Supra, at 435.)
What both the statute and Pringle (supra) require is that, once a prima facie showing is made, the defendant be given the opportunity to make a statement on the sufficiency of the accusatory instrument and the documented results of a reliable chemical test, which comprise the prima facie showing for license suspension, and an opportunity to request a short adjournment if necessary to marshall the evidence. This opportunity, as well as the opportunity to seek hardship relief, were given to the defendant.
The court further notes that, in determining a challenge to facial sufficiency on a motion to dismiss, a court examines not just the factual allegations in the accusatory instrument but also the inferences that may be drawn from it, and the supporting deposition(s). Certainly, at the stage of arraignments and to effectuate the legislative intent behind the prompt suspension law, a court may do so as well.
At defendant’s arraignment, I had before me not only the factual allegations of the accusatory instrument and the inferences that may be drawn therefrom, but also: the certified chemical test analysis, which showed that the defendant had a blood alcohol level of .19% by weight; the supporting deposition of the officer who administered the test; and the IDTU and the intoxicated driver examination sheets, which contained the defendant’s statements that he had been driving and drinking, as well as the arresting officer’s observation of the defendant and the results of the physical coordination test that further supported a showing that the defendant was intoxicated. More *446 over, defendant did not then challenge the facial sufficiency of the instrument or rebut the prima facie showing, or seek an adjournment to do so.
Based on all of the above, I hold that error was not committed and the defendant’s due process rights were not violated when defendant’s license was suspended pursuant to the prompt suspension law. Moreover, even were it to appear that this court erred in that a prima facie basis was not then shown (which I do not so hold), and even assuming that the defendant may now challenge the sufficiency of the instrument for suspension purposes, such an error does not give rise to a legal or jurisdictional impediment that, pursuant to CPL 170.30 (1) (f), would necessitate dismissal of the serious criminal charges pending against him and that are now set for trial.
Similarly, to the extent that the defendant was given leave to so argue before me, defendant has failed to establish the requisite compelling factors that would permit this court to exercise its discretion and dismiss this matter in the interests of justice pursuant to CPL 170.30 (1) (g), even would I be inclined to do so, which I am not. The sole argument raised by the defendant, which he terms a compelling factor, is that the period of time in which defendant’s driver’s license was suspended pursuant to the prompt suspension law, now equals or exceeds the license suspension period that would follow if defendant is convicted after trial. The suspension of a driver’s license for approximately V-h years until trial (due primarily to vigorous motion practice) is not so lengthy that its occurrence, as a matter of law, would not have been intended or contemplated by the Legislature or otherwise constitute a compelling factor mandating dismissal.
I also have carefully reviewed the procedural history in this matter. Defendant’s moving papers, the People’s response, and the defendant’s reply, submitted in the original motion to dismiss before Judge Barone, defendant’s moving papers, the People’s response, and the defendant’s reply, submitted in defendant’s motion to renew or reargue before Judge Barone, and defendant’s moving papers, the People’s response, and the defendant’s reply, submitted to me in this motion, were submitted in a timely manner. Similarly, the courts’ decisions on defendant’s three motions were issued in a timely manner following final submission of the motions.
Accordingly, defendant’s motion to dismiss pursuant to CPL 170.30 (1) (g) is also denied.